UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSA VEGA,

     Plaintiff,

v.                                                          Case No. 8:25-cv-359-CPT

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB).  For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1972, has a limited education, and has no past relevant work experience.  (R. 32, 678).  The Plaintiff applied for DIB in March 2015, alleging disability as of October 2014.  *Id.* at 144–45.  In a decision issued in July 2105, the Social Security Administration (SSA) found that the Plaintiff was disabled as of October 2014.  *Id.*

In December 2018, however, the SSA determined that the Plaintiff was no longer disabled as of December 1, 2018. *Id.* at 264–65. The SSA upheld this decision on reconsideration, *id.* at 159, 291–308, as did an Administrative Law Judge (ALJ) following a hearing on the matter, *id.* at 160–77. Notwithstanding these rulings, during the period between 2021 and 2024, the Appeals Council remanded the case three times so that the ALJ could address various issues with the findings of no disability. *Id.* at 184–89, 214–21, 258–59.

After the third remand by the Appeals Council, a different ALJ conducted another hearing in July 2024. *Id.* at 45–52. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In a decision issued in July 2024, the new ALJ determined that: (1) the most recent favorable medical decision finding that the Plaintiff was disabled—known as the "comparative point decision" (CPD)—was the one issued in July 2015; (2) at the time of the CPD, the Plaintiff had the medically determinable impairment of chronic liver disease; (3) since December 1, 2018, the Plaintiff has had the medically determinable impairments of obesity, anxiety disorder, alcohol use disorder, depression/bipolar disorder, and chronic liver disease; (4) the Plaintiff experienced "medical improvement" by December 1, 2018; (5) the Plaintiff had the residual functional capacity (RFC) as of that date to engage in sedentary work even though some of her impairments remained "severe;" (6) the Plaintiff had no past relevant work; and (7) considering the Plaintiff's age, education, work experience, and RFC,

she was capable of performing three specified jobs that exist in significant numbers in the national economy. *Id.* at 22–44. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 34.

The Appeals Council denied the Plaintiff's request for review. *Id.* at 1–8. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Once a claimant has been found to be disabled, her continued entitlement to benefits is subject to periodic review. 20 C.F.R. § 404.1594(a). Upon undertraining such review, the Commissioner may terminate a claimant's benefits if he finds that (1) there has been medical improvement in the claimant's impairment or combination of

---

[1] Unless otherwise indicated, citations to the Social Security Regulations (Regulations) are to the version in effect at the time of the ALJ's decision.

3

impairments related to her ability to work; and (2) the claimant is able to participate in substantial gainful activity.  42 U.S.C. § 423(f)(1).

In continuing disability cases, the Commissioner applies the procedures set forth in the pertinent Regulations.  *See* 20 C.F.R. § 404.1594.  These Regulations require a multi-step analysis in deciding whether a disability has ended.  In particular, as relevant here, the ALJ must assess: (1) whether a claimant has engaged in any substantial gainful activity; (2) if not, whether the claimant suffers from an impairment or combination of impairments that meets or equals a listed impairment; (3) if not, whether there has been "medical improvement;" (4) if so, whether such "medical improvement" pertains to the claimant's capacity to work; (5) if so, whether the claimant's current impairment is severe; (7) if so, whether the claimant has the RFC to perform her past relevant work; and (8) if not, whether the claimant can engage in other occupations that exist in significant numbers in the national economy given her RFC, age, education, and past work experience.  *See Id.* at § 404.1594(f) (setting forth the multi-step process for DIB claims).

"Medical improvement" is defined under the Regulations as "any decrease in the medical severity of . . . impairment(s) . . . present at the time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." *Id.* at § 404.1594(b)(1).  A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs[,] or laboratory findings associated with [a claimant's] impairment(s)." *Id*. at § 404.1594(c)(1).  Medical improvement is only related to a claimant's ability to work if there is "an increase in [the claimant's]

4

functional capacity to do basic work activities." *Id.* at § 404.1594(b)(3); *see also Demenech v. Sec'y of Health & Human Servs.*, 913 F.2d 882, 883 n.2 (11th Cir. 1990) (per curiam) (observing that before disability benefits can be terminated, there must be a determination that the medical improvement which has occurred "is related to the claimant's ability to do h[er] prior work").

To ascertain whether there has been medical improvement, the Commissioner must compare the new medical evidence with the medical evidence that supported the most recent final decision deeming the claimant to be disabled (i.e., the CPD). *See McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam); *see also* 20 C.F.R. § 404.1594(c)(1). In rendering this determination, the burden is on the Commissioner, not the claimant, to show medical improvement. *Olivo v. Colvin*, 2017 WL 708743, at *2 (M.D. Fla. Jan. 30, 2017) ("When considering a case for termination or cessation of benefits, . . . the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the [claimant] had experienced medical improvement.") (quoting *Townsend v. Comm'r of Soc. Sec.*, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015)) (internal quotation marks omitted).

If a claimant in a continuing disability case is dissatisfied with an ALJ's decision, she may ask the Appeals Council to review the matter. 20 C.F.R. § 404.967. In conducting this review, the Appeals Council must evaluate whether "'the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the disability question after a hearing.  42 U.S.C. § 405(g).  As with other disability determinations, judicial review is confined to evaluating whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted).  In considering whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam)[2] (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.  *Viverette*, 13 F.4th at 1313–14 (citation omitted); *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

III.

The Plaintiff's sole claim of error on appeal is that the ALJ erred in relying on the VE's testimony regarding job numbers for the three identified positions because those numbers were neither trustworthy nor plausible. (Doc. 20).  The Commissioner counters that the Plaintiff did not contest the VE's testimony at the hearing, and that the VE's testimony adequately substantiates the ALJ's resolution of the matter. (Doc. 24).  Upon a review of the record and the parties' submissions, the Court concludes that the Commissioner has the better argument.

As noted above, where, as here, an ALJ finds that a claimant has no past relevant work, the ALJ must determine if the claimant can engage in other occupations that exist in significant numbers in the national economy.  In addressing this issue, an ALJ may "take administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT)[3] and other sources set forth in the Regulations.  20 C.F.R. § 404.1566(d).  The Regulations also permit the ALJ to consider information supplied by a VE.  *Id.* at § 404.1566(e); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c.  "A [VE] is an expert on the kinds of jobs an individual can perform based on . . . her capacity and impairments." *Phillips*, 357 F.3d at 1240.

---

[3] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

"When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.* In rendering an opinion, "a VE may rely on [her] knowledge and expertise without producing detailed reports or statistics in support of [her] testimony."[4] *Griffin v. Comm'r of Soc. Sec.*, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018) (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (per curiam) and *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (per curiam)), *report and recommendation adopted*, 2018 WL 3344535 (M.D. Fla. July 9, 2018). An ALJ may, in turn, predicate her determination regarding the number of available positions purely on the VE's testimony. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citation omitted).

Irrespective of whether the ALJ relies exclusively on the VE, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The Supreme Court has declined to impose a categorical rule to address when a VE's job estimates count as "substantial evidence." *Biestek*, 587 U.S. at 108. Instead, the Court has emphasized that determining the sufficiency of VE testimony must be done on a case-by-case basis. *Id.*

---

[4] Indeed, in *Biestek*, the Supreme Court ruled that even if a VE refused to furnish the underlying data for her testimony, such refusal would not, in and of itself, preclude the VE's testimony from amounting to substantial evidence. *Biestek*, 587 U.S. at 99.

Here, the VE testified at the hearing that the Plaintiff could engage in the representative occupations of ampoule sealer, for which there are 654,000 positions in the national economy;[5] cuff folder, for which there are 191,000 positions in the national economy; and table worker, for which there are 580,000 positions in the national economy. (R. 33). In subsequently questioning the VE, Plaintiff's counsel did not ask the VE for any data buttressing these figures, nor did he offer any evidence of his own contradicting the VE's estimates. *Id.* at 48–51.

In her decision, the ALJ found that the VE's testimony comported with the information contained in the DOT, with one exception not pertinent here. *Id.* at 33. The ALJ then relied on the VE's testimony in determining that each of the three jobs existed in significant numbers in the national economy. *Id.*

The Plaintiff now contends that "no reasonable person would conclude that [the VE's job] numbers were even close to being accurate or reliable." (Doc. 20 at 6). To bolster this assertion, the Plaintiff cites to the Standard Occupation Classification (SOC) code numbers reported by the Bureau of Labor Statistics, which designate occupations by group. *Id.* at 9. According to the Plaintiff, there are more persons employed in the individual jobs identified by the VE than there are in the entire SOC group to which those positions belong. *Id.* By way of example, the Plaintiff points out

---

[5] "An ampule is a sealed vial made of glass or plastic that contains a sterile medicinal solution." *Belcher Pharms., LLC v. Hospira, Inc.*, 1 F.4th 1374, (11th Cir. 2021) (internal quotation marks and citation omitted). An ampoule sealer "[s]eals ampoules filled with liquid drug products, preparatory to packaging," among other related tasks. *See* DOT #559.687-014, 1991 WL 683782 (G.P.O. 4th ed., rev. 1991).

that while the VE testified there were 654,000 ampoule sealer positions in the national economy, the ampoule sealer job is in an SOC group which is comprised of a total of only 601,440 persons across 59 DOT occupations. *Id.* This challenge is unavailing.

To begin, at the hearing, the Plaintiff did not introduce the statistical information to which she now cites, nor did she object to the data the ALJ utilized in arriving at her job numbers. (R. 45–52). The Plaintiff's failure to do so precludes the Court from entertaining this belated line of attack at this juncture. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (rejecting a claimant's attempt on appeal to rely on information that was not produced to the ALJ, stating that the court would "look only to the evidence actually presented to the ALJ"); *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 675 (11th Cir. 2019) (same) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)).

The Court finds the opinion in *Valdez* instructive in this respect. In that case, the Eleventh Circuit brushed aside the claimant's contention that the Department of Labor's occupational employment data—which the claimant brought forth "for the first time to the district court"—showed that the VE's job numbers were "extremely overstated." *Valdez*, 808 Fed. Appx. at 1009. The Eleventh Circuit concluded that it was foreclosed from entertaining such data because the VE's testimony was the only evidence tendered to the ALJ concerning the number of available positions, and

10

because the claimant did not submit the "occupational employment statistics . . . [to] the ALJ or object to the [VE's] testimony." *Id*. at 1010.[6]

The Plaintiff's claim of error appears to be doomed for another reason as well. In *Webster*, the Eleventh Circuit dismissed the claimant's contention that the ALJ should have investigated a discrepancy between the VE's testimony regarding certain job numbers and the related figures published by the Bureau of Labor Statistics in the Occupational Employment Statistics (OES). *Webster*, 773 F. App'x at 555–56. As reflected in the district court's opinion in *Webster*, the VE in that case testified that there were "approximately 1,648,000 bench assembler jobs, 724,000 surveillance system monitor jobs, and 2,150,000 small products assembler jobs in the national economy." *Webster v. Comm'r of Soc. Sec.*, 2018 WL 3135154, at *4 (M.D. Fla. June 27, 2018), *aff'd*, 773 F. App'x 553 (11th Cir. 2019). Akin to the Plaintiff here, the claimant in *Webster* asserted that the number of positions specified by the VE for each of those occupations exceeded the total number of jobs in the broader SOC category to which the position belonged and that the VE's testimony was therefore fatally flawed. *Webster*, 773 F. App'x at 555.

The Eleventh Circuit found this contention unconvincing, ruling that an ALJ need only independently verify a VE's testimony when it conflicts with the DOT. *Id*.

---

[6] It bears mentioning that there is a separate line of authority suggesting that a claimant who does not raise an issue before the ALJ, as the Plaintiff neglected to do here, waives that challenge. *See, e.g., Crider v. Comm'r of Soc. Sec.*, 2018 WL 3628847, at *5 (M.D. Fla. June 12, 2018) (citing *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001; *Avila v. Astrue*, 2012 WL 5831287, at *11 (N.D. Ind. Nov. 15, 2012)), *report and recommendation adopted*, 2018 WL 3620722 (M.D. Fla. July 30, 2018).

at 555–56.  The Eleventh Circuit also added that the OES figures highlighted by the claimant were "not part of the SSA's regulatory scheme."  *Id.* (citing 20 C.F.R. § 404.1566(d)(1), (5)).

The Court finds *Webster* persuasive, especially given its factual similarity to this case.[7]  Notably, other courts in this Circuit presented with arguments analogous to the one raised by the Plaintiff here have followed *Webster*'s lead.  *See, e.g., Rosa v. Kijakazi*, 2022 WL 16540059, at *5 (M.D. Fla. Mar. 25, 2022) (citing *Webster* for the proposition that "[t]he uncontroverted testimony of the [VE] is substantial record evidence supporting the ALJ's decision" and that an ALJ need only independently verify the VE's testimony "when there is a conflict between the VE's testimony and the DOT, not in response to a purported conflict between the VE's testimony and job availability figures provided in the SOC") (internal quotation marks omitted); *Grome v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4594597, at *2, *5–6 (M.D. Fla. Sept. 23, 2019) (applying the reasoning in *Webster* in rebuffing the claimant's argument that the VE's testimony concerning the number of available occupations was "grossly overstated").[8]

In sum, the Plaintiff's claim of error fails.  The Plaintiff did not present the ALJ with the data upon which she now relies, nor did she quarrel with the VE's testimony

---

[7] The Court is likewise unmoved by the Plaintiff's reference to cases where other VEs have offered different estimates relative to the number of ampoule sealer positions.  *Rosa*, 2022 WL 16540059, at *5 (rejecting the claimant's effort to challenge the VE's testimony regarding the number of available jobs by pointing to substantially different testimony by the same VE in another case).

[8] The Plaintiff's reliance on *Smith v. Berryhill*, 2018 WL 2227225 (N.D. Fla. Apr. 18, 2018) does not dictate a contrary outcome, as *Smith* was decided before *Webster*.

at the ALJ hearing.  Moreover, the Plaintiff's challenge is undermined by the Eleventh Circuit's opinion in *Webster*.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

13